CARLTON, J.,
 

 for the Court.
 

 ¶ 1. Roderick Foriest was indicted by a Walthall County grand jury on September
 
 *386
 
 13, 2006, for the crime of unlawful sale of cocaine within 1,500 feet of a church pursuant to Mississippi Code Annotated section 41-29-142(1) (Rev.2005) and for conspiracy to sell cocaine pursuant to Mississippi Code Annotated section 97 — 1—1(a)(1) (Supp.2008). On October 2-3, 2008, Fori-est was tried by a jury in the Walthall County Circuit Court. Foriest was found guilty of selling cocaine in violation of Mississippi Code Annotated section 41-29-139(a)(1) (Rev.2005) and conspiracy to sell cocaine under section 97-l-l(a)(l). Fori-est was sentenced as a habitual offender to life in the Mississippi Department of Corrections (MDOC) without eligibility for parole on both counts.
 

 ¶2. After denial of his post-trial motions, Foriest appealed alleging that the trial court erred in denying his motion for a new trial because the verdict was against the overwhelming weight of the evidence. Because we find that the verdict was not against the overwhelming weight of the evidence, we affirm.
 

 FACTS
 

 ¶ 3. On April 10, 2006, two confidential informants were sent out to make a drug buy. They were wired with an audio recorder and a video transmitter. One of the informants, Joey Boone, approached Curtis Hart and told him that he was looking for some “white” (slang for powder cocaine). Hart replied that he only had “hard” (slang for crack cocaine). Boone told Hart that he would pay $150 for an eight ball of “white.” Hart then told Boone to make the block and come back around.
 

 ¶ 4. When Boone and Hart met up again moments later, Foriest was with Hart in Hart’s truck. Boone and Hart discussed buying and selling cocaine. Boone testified that during this second round of negotiations, Hart and Foriest were talking back and forth as Boone was talking to Hart. Boone testified that Foriest did not directly engage in conversation with him. However, Hart testified that when he and Foriest were talking, Foriest was telling Hart at what price to sell the cocaine to Boone.
 

 ¶ 5. At trial, a video of the above negotiations was played for the jury. Although Foriest’s voice was not recorded on the tape, Agent Billy Warner of the Mississippi Bureau of Narcotics testified as to the visual contents of the video played for the jury, stating that:
 

 [E]very time Mr. Hart would look over to the informant, the informant states something, then Mr. Foriest, he would be looking at him while he’s saying it, and then when he finishes talking he’ll turn and put his hand by his mouth, say something to Mr. Hart. Mr. Hart will turn back and speak to the informant.
 

 ¶ 6. When a deal had been reached, Hart told Boone to meet him at a local Amoco station. Hart testified that, in the meantime, Foriest gave him the cocaine to sell to Boone. Hart then went alone to meet Boone at the Amoco station. Upon arrival, Hart told Boone to come look under his hood. Hart then gave Boone a clear baggie of what was later confirmed to be cocaine. Boone gave Hart $150 for the cocaine. Hart testified that he then took the $150 to Foriest. In exchange for his assistance with the drug sale, Foriest gave Hart crack cocaine.
 

 ¶ 7. In contrast to the above testimony, Foriest testified that he took no part in the drug deal between Hart and Boone. Fori-est testified that the reason he was in Hart’s truck was to get a ride to the store to buy cigars. Foriest stated that on the way to the store, two “white guys” pulled up to Hart’s truck and asked about buying drugs. Foriest stated that when he was talking to Hart, during Hart’s negotiations
 
 *387
 
 with Boone, he was telling Hart that he did not want to be a part of the drug deal. Foriest testified that during the negotiations, he got out of the truck and walked back to his house. Foriest stated that he did not give Hart any drugs, nor did he receive any money from the drug deal.
 

 ¶ 8. Foriest argues that the only testimony linking him to the sale of cocaine in this case is Hart’s testimony. However, the record reflects the following exchange between the State and Agent Warner on direct examination:
 

 Agent Warner: It was on August ... 14. We were in this courtroom on another matter. I was present and Mr. Foriest was present on other matters. And we began to leave the courtroom area to go through the chambers into the law library, and Mr. Foriest asked me if I had a drug case on him. And I answered to him that I might have one, you know, just in a conversation, and he said, “I know when it was.” He said, “It was that white boy that day, 8.5 grams.” And I said, “Yeah,” I said, “it might be. That might be when it was.” And he continued to talk with me as we were walking out, and he said, “I’ll take a plea to that.” He said, “I’ll take a plea to that to do about three years.” And I said, “Well, we’ll just see.” And we kind of kept on walking and going on through the law library around towards the elevator, and he said, “Yeah, I’ll take a plea to that if ol’ Curt don’t hold up for it.”
 

 State: Did he say anything else about drug cases on him?
 

 Agent Warner: Yeah, he said that — he said if somebody told him they had a drug case on him, he said nine out of ten they’d be right.
 

 Officer Gary McBeth, a Walthall County probation officer, testified that he was in the courthouse on August 14 and heard the above exchange between Agent Warner and Foriest.
 

 ¶ 9. The jury found Foriest guilty of the unlawful sale of cocaine and conspiracy to sell cocaine. Foriest subsequently submitted a motion for a judgment notwithstanding the verdict or in the alternative, for a new trial, which the trial court denied.
 

 WHETHER THE TRIAL COURT ERRED IN DENYING FORIEST’S MOTION FOR A NEW TRIAL
 

 ¶ 10. The standard of review for determining whether the jury verdict was against the overwhelming weight of the evidence is that this Court must “accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial.”
 
 Price v. State,
 
 898 So.2d 641, 652(26) (Miss.2005) (citing
 
 Collier v. State,
 
 711 So.2d 458, 461(12) (Miss.1998)). “A new trial will not be ordered unless the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction ‘unconscionable injustice.’ ”
 
 Id.
 
 (citing
 
 Groseclose v. State,
 
 440 So.2d 297, 300 (Miss.1983)). “[I]f the verdict is against the overwhelming weight of the evidence, then a new trial is proper.”
 
 Id.
 
 (citing
 
 May v. State,
 
 460 So.2d 778, 781-82 (Miss.1984)).
 

 ¶ 11. Under section 41-29-139(a)(l), a person is guilty of the sale of a controlled substance if he or she is found to have “knowingly or intentionally” sold a controlled substance. Under section 97-1-1(a)(1), a person is guilty of the conspiracy to sell a controlled substance if he is found to have conspired with one or more persons to commit the crime of the unlawful sale of a controlled substance. Foriest was convicted of both the unlawful sale of cocaine and conspiracy to sell cocaine.
 

 
 *388
 
 ¶ 12. Foriest argues that “the testimony of Curtis [Hart] is the only evidence that Foriest was involved in the sale of cocaine.” We disagree. Again, under our standard of review, “this Court must accept as true the evidence which supports the verdict.”
 
 Collier,
 
 711 So.2d at 461(12) (citation omitted). In this case, several witnesses testified as to Foriest’s involvement in the drug sale in question. Agent Warner testified about a conversation Fo-riest initiated with him while both were in the courthouse on other matters in which Foriest told Agent Warner that he would “[plead] to [the drug deal in question] if ol’ Curt [Hart] don’t [sic] hold up for it.” Officer McBeth testified that he heard the conversation between Agent Warner and Foriest, and he corroborated Agent Warner’s testimony. Additionally, the jury was permitted to watch the video showing Foriest’s physical behavior during the drug sale negotiations in which Foriest was shown talking to Hart with his hand over his mouth as Hart negotiated with Boone about the price of the cocaine.
 

 ¶ 13. Additionally, Foriest argues that Hart was not a credible witness. This Court has routinely held that “[t]he jury is the judge of the credibility of a witness.”
 
 Schuck v. State,
 
 865 So.2d 1111, 1124(37) (Miss.2003) (citation omitted). Moreover, “[m]atters regarding the weight and credibility [of] the evidence are to be resolved by the jury.”
 
 Id.
 
 at 1123(34) (citation omitted). Foriest argues that Hart changed his testimony on direct examination as to when Hart got the cocaine from Foriest. Foriest also contends that Hart’s testimony against him cannot be trusted because Hart testified against Foriest in the hopes of getting a good deal from the district attorney’s office.
 

 ¶ 14. It was within the province of the jury to either accept or reject Hart’s testimony as being credible.
 
 See id.
 
 Moreover, the jury was provided a jury instruction in which they were advised that “the testimony of an accomplice is to be considered and weighed with great care and caution (and suspicion)” and that the jury “may give it such weight and credit as [the jurors] deem[ed] it deserve[d].”
 

 ¶ 15. Ultimately, the jury, “having the benefit of observing the demeanor and expressions of the witnesses,” believed that Foriest was involved in the drug sale between Hart and Boone.
 
 Price,
 
 898 So.2d at 652(25). As a result, the jury found Foriest guilty of both the sale of cocaine and conspiracy to sell cocaine. Finding no error, we affirm.
 

 ¶ 16. THE JUDGEMENT OF THE CIRCUIT COURT OF WALTHALL COUNTY OF CONVICTION OF COUNT I, SALE OF COCAINE, AND COUNT II, CONSPIRACY TO SELL COCAINE, AND SENTENCE AS A HABITUAL OFFENDER FOR EACH COUNT TO LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WALTHALL COUNTY.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.